UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


| | | |
|---|---|---|
| **KEVIN CHARLES GASAWAY**     **D.O.C. # 238599** | : | **DOCKET NO. 14-cv-1083** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BURL CAIN** | : | **MAGISTRATE JUDGE KAY** |


### REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Kevin Charles Gasaway ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary at Angola. Burl Cain ("respondent"), warden, has responded [doc. 13].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

**I.**
**BACKGROUND**

*A. Conviction*

The petitioner was indicted on a charge of first degree murder in the 14th Judicial District, Calcasieu Parish, Louisiana. Doc. 13, att. 2, p. 109. The charge related to the killing of his ex-wife,

Courtnee Lewis, on December 14, 2004.[1] *State v. Gasaway*, 57 So.3d 597, 597–98 (La. Ct. App. 3d Cir. 2011). The indictment was later amended to a charge of second degree murder and the petitioner pleaded not guilty and not guilty by reason of insanity to the amended charge. Doc. 13, att. 2, p. 109; Doc. 13, att. 5, pp. 40–41.

After a jury trial on December 7, 2009, petitioner was convicted of second degree murder. Doc. 13, att. 4, pp. 82–83. The trial court imposed the mandatory sentence of life imprisonment without the possibility of parole. Doc. 13, att. 6, pp. 118–19.

### B. Direct Appeal

The petitioner then appealed his conviction, raising as his sole assignment of error the trial court's denial of his motion to recuse the trial judge, Hon. David Ritchie.[2] *Gasaway*, 57 So.3d at 600. The Louisiana Third Circuit Court of Appeal affirmed the trial court's 2008 ruling on the Motion to Recuse. *Id.* at 601. The petitioner sought review in the Louisiana Supreme Court, which denied same on October 7, 2011. *State v. Gasaway*, 71 So.3d 306 (La. 2011). He did not seek review in the United States Supreme Court. Doc. 1, p. 3.

---

[1] The victim is referred to in some of the state court proceedings as the petitioner's estranged wife, but she had obtained a divorce from the petitioner on December 2, 2004. Doc. 13, att. 5, p. 179.

[2] The petitioner filed a motion to recuse Judge Ritchie on October 19, 2007. Doc. 13, att. 3, pp. 145–54. Judge Ritchie denied the motion the same day. Doc. 13, att. 2, p. 80. The petitioner filed a writ application with the Third Circuit, which denied same. Doc. 13, att. 3, p. 167. The petitioner then sought review in the Louisiana Supreme Court, which vacated Judge Ritchie's ruling and remanded the motion to the trial court for hearing before another judge. *Id.* at 217.

An evidentiary hearing then took place before the Hon. Todd S. Clemons on April 2, 2008. Doc. 13, att. 4, pp. 128–78. The matter was further discussed in open court before Judge Clemons on April 4, 2008. *Id.* at 180–90. On April 9, 2008, Judge Clemons denied the motion. *Id.* at 191–201. The petitioner filed for a writ of review with the Third Circuit, which denied the writ. *Id.* at 38. The petitioner then sought review with the Louisiana Supreme Court, which denied same on October 3, 2008. *Id.* at 40.

### C. State Collateral Review and Federal Habeas Petition

On May 18, 2012,[3] the petitioner filed an application for post-conviction relief with the trial court. Doc. 13, att. 7, pp. 100–24. As his sole claim for relief he asserted ineffective assistance by his trial counsel, based on the following alleged deficiencies:

1. Failure to object and request a stay of proceedings after the trial court ordered an evaluation of the petitioner's mental capacity.

2. Failure to object and request a stay of proceedings after the prosecution requested a sanity hearing.

3. Failure to present a complete and accurate picture of the petitioner's diagnosis of Borderline Personality Disorder.

4. Failure to move for a post-judgment verdict of "Not guilty and not guilty by reason of insanity."

*Id.* at 117–21. The trial court reviewed this claim on the merits and denied the petitioner's application. *Id.* at 125. The petitioner sought review with the Third Circuit which denied the application on the merits. *Id.* at 133. He then sought review with the Louisiana Supreme Court, which denied same on April 4, 2014. *State ex rel. Gasaway v. State*, 135 So.3d 635 (La. 2014).

### D. Federal Habeas Petition

The instant petition was filed on June 2, 2014. Doc. 1, p. 12. The petitioner seeks federal review of the trial court's denial of his motion to recuse and of his ineffective assistance of counsel claim. *Id.* at 5, 7.

---

[3] The respondent dates the application from its filing with the 14th Judicial District on May 25, 2012. Doc. 13, att. 1, p. 9. Under Louisiana law a pleading by a pro se inmate is considered filed, and so its timeliness is calculated *infra*, from the date the inmate delivers the papers to prison authorities for submission. *Stoot v. Cain*, 570 F.3d 669, 671–72 (5th Cir. 2009). The petitioner certifies that the application was submitted to the inmate mailing system on May 18, 2012. Doc. 13, att. 7, p. 124. Therefore May 18 is the effective date of filing.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

#### B. *Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### *2. Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### *C. General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary

to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner

has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's conviction became final ninety days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing this petition began to run on **January 5, 2012**. It was suspended by the filing of his application for post-conviction relief with the trial court on **May 18, 2012**, after **134 days** had run. Lastly, an additional **59 days** accrued between denial of review by the Louisiana Supreme Court on **April 4, 2014**, and filing of the instant application on **June 2, 2014**. Therefore a total of **193 days** were counted against § 2244(d)'s one-year time limit, meaning that the petition is timely.

### B. *Exhaustion of State Court Remedies and Procedural Default*

A review of the petitioner's filings to the state courts reveals that both claims raised in the instant petition were properly presented to the trial court, the court of appeal, and the state supreme court. Therefore state court remedies have been exhausted. Because both claims were exhausted and the Third Circuit, as the last state court to issue a judgment, cited no procedural bars, there is no basis for procedural default.

### C. Substantive Analysis

Having determined that both claims are timely, exhausted, and not subject to procedural default, this court now considers each one by first ascertaining the appropriate standard of review and then applying that standard to the merits of the argument.

### *1. Whether the trial court erred in denying the petitioner's motion to recuse Judge Ritchie.*

The petitioner maintains that the trial court erred in denying his motion to recuse Judge Ritchie based on the judge's prior association with the Calcasieu Parish Public Defender's Office. This claim involves reviewing state court conclusions on issues of fact relating to Judge Ritchie's pre-trial contact with the petitioner as well as the legal question of whether these facts entitled the petitioner to a recusal. Accordingly, we evaluate the state court's ruling for its contrariness to or unreasonable application of federal law, overturning its factual findings only upon a showing of clear error. *Lambert v. Blodgett*, 393 F.3d 943, 977–78 (9th Cir. 2004).

The petitioner is entitled to habeas relief only if he can show that denial of the motion resulted in a due process violation under federal law.[4] *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008); *see Aetna Life Ins. Co. v. Lavoie*, 106 S.Ct. 1580, 1584–85 (1986) (distinguishing general allegations of judicial bias from those violating the Due Process Clause). He can achieve this by showing presumptive bias on the part of the judge.[5] *Buntion*, 524 F.3d at 672.

Presumptive bias occurs where "the probability of actual bias is too high to be constitutionally tolerable." *Richardson v. Quarterman*, 537 F.3d 466, 475 (5th Cir. 2008) (internal

---

[4] Both the petitioner and respondent argue at length over the grounds for recusal under Louisiana law. However, the scope of our review is limited to clearly established federal law, which refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 123 S.Ct. 1166, 1172 (2003).

[5] A due process violation may also be achieved by showing actual bias on the part of the judge. *Buntion*, 524 F.3d at 672. However, none is alleged here nor does the record support it.

alterations omitted). The Supreme Court recognizes presumptive bias in any of the following three situations: "(1) the decision maker has a direct personal, substantial, **and** pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (emphasis added). Only the third situation is potentially availing in this case.

The third situation arises from *In re Murchison*,[6] where the Supreme Court condemned situations "which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the state and the accused . . . ." 75 S.Ct. 623, 625 (1955) (quoting *Tumey v. Ohio*, 47 S.Ct. 437, 444 (1927)). Applying this rule, the Court noted:

> As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session. His recollection of that is likely to weigh far more heavily with him than any testimony given in the open hearings. Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination.

*Id.* at 626.

Here Judge Ritchie came into contact with the petitioner as a client for two cases during the former's time at the Public Defender's Office. Judge Ritchie appeared on the petitioner's behalf for a DWI, Third Offense in 1996. Doc. 13, att. 4, p. 138. He also filed motions on the petitioner's behalf in 2003 when the petitioner was charged with Violation of a Protective Order, Unauthorized Use of a Movable, and Simple Battery. *Id.* at 139–40. However, Judge Ritchie stated

---

[6] In *Murchison* the judge charged two witnesses with contempt from their testimony before him in secret hearings and then presided over their contempt hearings. 75 S.Ct. at 626–27.

at the recusal hearing that he recalled only the petitioner's name and had no other recollections relating to his cases. *Id.* at 153.

Though the latter charges did involve the victim in this case, they were not introduced into evidence in the petitioner's murder trial. *Id.* at 154.  The 2003 charges on which Ritchie had filed motions were dismissed with apparent victim authorization in September 2003.[7] *Id.* at 142. The petitioner was also represented by another attorney at the Public Defender's Office on misdemeanor battery and violation of a protective order charges at that time, and the prosecution had given notice of its intent to introduce evidence of these charges at the murder trial. *Id.* at 141–42, 145.

Ron Ware, who was then executive director of the Public Defender's Office, testified that the filings Ritchie made in the 2003 case were "standard filings"[8] and that he had no record of the Ritchie representing the petitioner in any in-court proceedings. Doc. 13, att. 4, p. 147. Ritchie was also on a leave of absence from June through mid-November 2003 in order to campaign for his judgeship and Ware estimated that he was out of the office approximately 70 to 75 percent of the time. *Id.* at 136–37, 148–49, 155.

The petitioner alleges that Ritchie, "[a]s an adequate attorney," "obviously would have interviewed Mr. Gasaway and reviewed the state's evidence and the state's responses to his motions. He would have known the facts of the other pending cases in his office." Doc. 1, att. 2, p. 5. The petitioner also contends that "Mr. Gasaway would have spoken in confidence to the attorney Ritchie about his cases [and] would have told him about the facts relating to the repeated abuse and battery of his wife." *Id.*

---

[7] The Public Defender's Office was appointed to represent the petitioner on these charges in July 2003. Doc. 13, att. 4, p. 140.
[8] These filings were "our standard motion for discovery . . . and also a Motion for a Bill of Particulars, prepared by our staff and signed by [Ritchie] . . . ." *Id.* at 140.

Judge Clemons, who heard the motion to recuse, noted that he found no basis for holding that Judge Ritchie had any personal interest or bias against the petitioner or in the outcome of the trial. Doc. 13, att. 4, pp. 194–95. He also found no evidence that Ritchie acquired knowledge of the offenses later introduced as evidence from his association with the Public Defender's Office. *Id.* at 196. There is nothing in the record to support the conversations and knowledge of the prior offenses alleged by the petitioner, particularly given Ritchie's limited filings in his 2003 offense and his limited presence in the office while the offenses that were introduced as evidence were pending. His suppositions do not provide a sufficient basis for overturning the state court's findings.

Accordingly, we cannot find presumptive bias based on Ritchie's prior involvement with the petitioner or with the Public Defender's Office. The record establishes that Judge Ritchie did not have sufficient knowledge or memory of the petitioner or any of his prior offenses to threaten his impartiality in the 2009 trial. This claim therefore offers no basis for federal habeas relief.

### 2. *Whether the petitioner received ineffective assistance of counsel.*

The petitioner also claims ineffective assistance, alleging deficiencies in performance by his counsel in connection to his sanity commission proceedings and at trial. This claim is a mixed question of law and fact. *Ward v. Dretke*, 420 F.3d 479, 486 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by

counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

Here the petitioner renews all allegations of deficient performance from his state application for post-conviction relief. We review each one under the standards of *Strickland*.

### a. *Failure to object and request a stay of proceedings after the trial court ordered an evaluation of the petitioner's mental capacity and after the prosecution requested a sanity hearing.*[9]

The petitioner contends that his counsel in pre-trial proceedings, Pam Spees, performed deficiently by failing to request a stay of proceedings while his mental capacity to proceed was evaluated and then during the second sanity commission relating to his insanity plea. However, he fails to show the necessity of these motions, much less how the failure to so move amounted to deficient performance.

On January 31, 2007, Spees filed a Motion to Appoint a Sanity Commission. Doc. 13, att. 3, p. 102. The trial court granted the motion the same day and the sanity commission hearing took place on March 28, 2007. *Id.* at 103; Doc. 13, att. 4, pp. 110–23. At the conclusion of this hearing the court ruled that the petitioner was competent to stand trial. Doc. 13, att. 4, p. 122.

When the issue of a defendant's mental capacity to stand trial is questioned, "there shall be no further steps in the criminal prosecution . . . until the defendant is found to have the mental

---

[9] This claim combines the petitioner's first and second allegations under ineffective assistance of counsel.

capacity to proceed." LA. C. CR. P. art. 642. Article 642 contains no indication that a motion is required to invoke a stay of proceedings: it is automatic once the issue of capacity is raised.[10] Furthermore, the record does not show, nor does the petitioner allege, that any steps in the prosecution took place between January 31 and March 28, 2007. *See* Doc. 13, att. 4, p. 2 (index of proceedings). Thus Spees did not perform deficiently by failing to move for a stay of proceedings after the trial court granted the Motion to Appoint a Sanity Commission.

The petitioner also alleges that Spees performed deficiently by failing to move for a stay of proceedings after the prosecution requested a sanity hearing. On October 25, 2007, after the petitioner amended his plea to "Not guilty and not guilty by reason of insanity," the prosecution requested appointment of a sanity commission in order to examine the petitioner's mental condition at the time of the offense. Doc. 13, att. 3, pp. 162–63. This hearing took place on June 3, 2009. Doc. 13, att. 2, p. 92. Other proceedings took place in the interim, including those related to the Motion to Recuse discussed *supra*. Doc. 13, att. 4, pp. 3–4.

The issue in the 2009 sanity commission hearing was sanity at the time of the offense, not competency to stand trial.[11] Appointment of a sanity commission on this issue is discretionary and does not provide grounds for staying the proceedings. *Compare* LA. C. CR. P. art. 650 *with id.* at art. 642. As the petitioner was declared competent to stand trial in March 2007 and this issue had not been reopened, there was no basis for a stay of proceedings. The fact that Spees failed to request one does not amount to deficient performance. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th

---

[10] *See, e.g.*, *State v. Calais*, 615 So.2d 4, 5 (La. Ct. App. 3d Cir. 1993) ("It is well settled by the jurisprudence that any further steps in the prosecution taken after the issue of the defendant's mental capacity to proceed was raised must be nullified, vacated, and set aside.")

[11] The experts' reports from the 2009 hearing apparently touched on the issue of present mental capacity. Doc. 13, att. 4, p. 252. At the end of the hearing the court asked for clarification on whether their testimony related to competency to proceed or just sanity at the time of the offense. *Id.* The prosecutor confirmed that the issue was only sanity at the time of the offense and that there had been no renewed motion based on competency. *Id.* There is also nothing in the record to reflect that the issue of competency to stand trial was reopened after the court's ruling based on the 2007 sanity commission.

Cir. 1990) ("This court has made clear that counsel is not required to make futile motions or objections.") Accordingly, the petitioner fails to show that he received ineffective assistance of counsel under this claim.

### b. Failure to present a complete and accurate picture of the petitioner's diagnosis of Borderline Personality Disorder.

Spees hired Dr. Donald Dutton, a psychologist, as an expert witness during the pre-trial proceedings. *See* Doc. 13, att. 3, p. 114. Dutton's curriculum vitae showed extensive professional familiarity with both domestic violence and Borderline Personality Disorder ("BPD"). Doc. 13, att. 6, pp. 28–34. After evaluating the petitioner, interviewing members of his family, and reviewing other records, Dutton submitted a report outlining his opinion that the petitioner suffered from BPD. Doc. 13, att. 3, pp. 168–214. Dutton also testified at the petitioner's trial, where he was examined by defense counsel Charles St. Dizier. Doc. 13, att. 6, pp. 28–84.

The petitioner points to the testimony of Dr. Paul Ware who appeared as an expert in a totally unrelated custody case and gave a description of BPD in that trial. *See Hawthorne v. Hawthorne*, 676 So.2d 619, 627–28 (La. Ct. App. 3d Cir. 1996). The petitioner alleges that a comparison of Dutton's testimony in his case with Ware's testimony in *Hawthorne* shows that Dutton failed to present a complete picture of BPD.

Petitioner provides us with no guidance, jurisprudential or otherwise, of how testimony of one expert in a totally unrelated case could have any bearing at all on the extent to which his attorneys may have performed deficiently in this case. Petitioner fails to show that he received ineffective assistance of counsel under this claim.

### c. *Failure to move for a post-judgment verdict of "Not guilty and not guilty by reason of insanity."*

The petitioner alleges that St. Dizier performed deficiently when he failed to move for a post-verdict judgment of acquittal. He contends that "the evidence was insufficient to convict, and strongly suggests that the State of Louisiana convicted an insane man." Doc. 1, att. 2, p. 16. However, counsel is under no duty to make futile motions. *Koch*, 907 F.2d at 527. Therefore we first review the basis for a post-judgment verdict of acquittal under Louisiana law in order to determine if the motion was warranted. If we conclude the motion would have been warranted then we can consider whether counsel's failure to make the motion should result in the granting of the writ.

"A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, **viewed in a light most favorable to the state**, does not reasonably permit a finding of guilty." LA. C. CR. P. art. 821 (emphasis added). The test is drawn from federal review of evidence sufficiency and requires determining whether "a reasonable trier of fact . . . simply could not conclude that all elements of the offense . . . have been proved beyond a reasonable doubt." *State v. Byrd*, 385 So.2d 248, 250 (La. 1980) (citing *Jackson v. Virginia*, 99 S.Ct. 2781 (1979)). Claims relating to evidence sufficiency are mixed questions of law and fact. *Hernandez v. Warden, LA State Penitentiary*, 2014 WL 2169128, *9 (W.D. La. May 23, 2014).

The petitioner alleges that the jury erred by failing to find him "Not guilty or not guilty by reason of insanity," because the evidence supported that he might have dissociated or lost control at the time he killed the victim.[12] Such a verdict is warranted under Louisiana law when "the

---

[12] Although the petitioner's phrasing of the claim could be interpreted as challenging the trial court's competency finding as well (and the respondent answers both interpretations), the petitioner's argument underneath this claim makes it clear that he believes he should not have been convicted because of his alleged insanity at the time of the offense. *See* Doc. 1, att. 2, p. 17 ("In other words, Gasaway was not responsible for his conduct and actions because he was temporarily insane.")

circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question." LA. REV. STAT. § 14:14. A defendant must rebut the presumption that he was sane at the time of the offense by a preponderance of the evidence. *State v. Peters*, 643 So.2d 1222, 1225 (La. 1994).

At trial the jury heard Dutton's testimony that people with BPD could experience transient psychotic states in times of stress and that they were particularly triggered by relationship stress. Doc. 13, att. 6, pp. 42–47. He also stated his diagnosis, based on extensive interviews and testing, of BPD for the petitioner. *Id.* at 48–50. He offered that the weapons the petitioner took to the victim's house on the night of the murder were characteristic of the "grandiose gestures" displayed by those with BPD:

> I mean, there's a lot of sort of extravagant gesture that goes on and this is one of the things that may have been his motive at this particular time; that he was going to threaten his wife and that in some way, given his way of thinking, if he threatened her efficiently enough he would actually convince her to come back with him.

*Id.* at 54–55. He also offered his opinion, based on the police interviews with the petitioner in the hours after the murder, that he might have hallucinated seeing the truck of the victim's boyfriend at her house that night. *Id.* at 55. However, Dutton also cautioned that "I have no way of knowing how accurate [his recollections] were" and that they "might be a self-serving part of the explanation." *Id.*

Finally Dutton stated that the psychotic states experienced by those with BPD were time-limited. *Id.* at 57. Accordingly, the fact that the petitioner had thrown his gun away and fled to a friend's house after the murder did not change Dutton's opinion that the petitioner was in a psychotic state, unable to distinguish right from wrong, at the time of the offense. *Id.* at 57–58.

The state offered the testimony of Dr. Garrett Ryder who was accepted as an expert in the fields of psychiatry and neurology. *Id.* at 85, 88. Ryder had also examined the petitioner and conducted his own tests as part of the sanity commission ordered to determine his sanity at the time of the offense. *Id.* at 88; Doc. 13, att. 4, pp. 230–35. Ryder did not speak directly with members of the petitioner's family but he did review Dutton's report. Doc. 13, att. 6, pp. 88, 95–101. Ryder concluded that the petitioner did not meet the diagnostic criteria for Borderline Personality Disorder or any other mental illness, other than substance abuse issues. *Id.* at 91–93.

The testimony of Dr. Charles Robertson, court-appointed mental health professional at the 2009 sanity commission hearing,[13] was read into the record at trial. *Id.* at 106; *see* Doc. 13, att. 4, pp. 205–28 (sanity commission testimony). Robertson had also testified that, based on his review of Dutton's report, independent assessment of the petitioner, and consideration of other records, he did not believe the petitioner to be insane at the time of the offense. *Id.* at 209–10.

Dutton's credentials were impressive and his testimony laid a plausible theory for the petitioner's lack of culpability; however, the jury also had other evidence to consider, namely testimony from two other mental health professionals who disagreed. "[I]t is well accepted that the trier of fact is charged with the determination of what credibility it assigns to expert witnesses and then to decide which expert among those testifying it finds more credible." *Laysone v. Kansas City Southern R.R.*, 786 So.2d 682, 692 (La. 2001). The petitioner does not allege, nor does the record provide, sufficient grounds for undermining the jury's credibility determinations. The jury was free to believe the opinions of the state's witnesses even though they conflicted with the opinions of the defense's expert.

---

[13] Robertson was accepted there as an expert in the fields of clinical psychology and neuropsychology. Doc. 13, att. 4, pp. 207–08.

With the evidence placed in the light most favorable to the prosecution, a conviction was not beyond the grasp of any rational trier of fact; thus, a motion for a post-judgment verdict of acquittal would have been futile. The fact that the petitioner's attorney did make the motion does not establish deficient performance.

The petitioner fails to satisfy *Strickland* under this claim as well. Therefore he has not shown a right to habeas relief on the basis of ineffective assistance of counsel.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate

of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    THUS DONE this 1st day of February, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE